UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER L. FERRELL, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT M. SPEER, Acting Secretary of the Army, <br><br> Defendant. | CASE NO. C17-5276 BHS <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND DENYING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER |

This matter comes before the Court on Plaintiff Jennifer Ferrell's motion to compel (Dkt. 20) and motion for a protective order (Dkt. 18). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby (1) grants in part and denies in part the motion to compel, and (2) denies the motion for a protective order.

## I. BACKGROUND

On April 12, 2017, Plaintiff filed her complaint against Defendant Robert Speer in his capacity as Acting Secretary of the Army ("Army"). Dkt. 1. Plaintiff previously worked as a Records and Licensing Official (a civilian employee position) at the

Logistics Readiness Center at Joint Base Lewis McCord ("JBLM") until she resigned on June 21, 2016. *Id.* Plaintiff alleges that she was subject to sexual harassment rising to a hostile work environment and that she was constructively terminated as a result of continued hostility and retaliation after she reported the harassment. *Id.* Accordingly, Plaintiff brings claims for violations of Title VII. *Id.* On July 27, 2017, the Army filed an answer to the complaint. Dkt. 8.

In support of her claim of constructive discharge, Plaintiff specifically alleges as follows:

> Plaintiff sought medical treatment from her primary care physician and a mental health provider due to the stress and anxiety of the retaliation and ostracism she suffered. Both care providers highly recommended plaintiff resign due to the hostile conditions of her current job and find work in a healthier environment.

Dkt. 1 at 4. As part of her claim, Plaintiff seeks noneconomic damages for "mental and emotional distress, pain and suffering, and loss of enjoyment of life resulting from the Army's unlawful employment practices in an amount to be established at trial." *Id.* at 6.

On January 19, 2018, the Court entered a scheduling order setting a trial date for October 23, 2018. Dkt. 15. The Court also set a deadline of May 29, 2018 for discovery related motions and June 25, 2018 as the cutoff for discovery. *Id.*

**A.     Discovery Propounded by the Army Related to Plaintiff's Medical and Mental Health Providers**

August 18, 2017, the Army propounded written discovery requests on Ms. Ferrell, including Interrogatory No. 6 and Request for Production No. 5. Interrogatory No. 6 sought the identity of:

> "all [Ms. Ferrell's] medical care providers, clergy, social service organizations, or others from whom [she has] sought or received treatment, examination, consultation, referral, care, or counseling for any injury, condition or ailment, whether mental or physical, whatever the alleged cause(s), from 2007 through the present…"

Dkt. 19 at 2.[1] Additionally, Request for Production No. 5 sought: "all documents including medical, pharmaceutical or hospital bills or records, concerning the treatment, condition or ailment you identify in your answers to Interrogatory No. 6." *Id.*

Ms. Ferrell objected to these requests as overly broad, unduly burdensome, seeking patient privileged information, and outside the scope of permissible discovery. Dkt. 19 at 2. After conferring on the matter, the parties agreed to narrow the scope of the discovery requests and Plaintiff produced (1) five years of medical records from her primary care provider, (2) the complete medical records from her mental health provider, and (3) and medical records from one occasion on which she saw a mental health professional on a referral from her primary care provider. *Id.*

Subsequently, the Army propounded additional discovery requests, wherein the Army requested as follows:

> At paragraph 3.11 of the Complaint, you allege that: "Plaintiff sought medical treatment from her primary care physician and a mental health provider due to stress and anxiety of the retaliation and ostracism she suffered. Both care providers highly recommended plaintiff resign due to the hostile conditions of her current job and find work in a healthier environment." As to these allegations: 1) please identify the "care providers" you reference; 20 please describe in detail each occasion in which each care provider made these statements, including date, what

---

[1] These partial quotes attributed to the Army's discovery requests propounded on August 18, 2017 are taken from the declaration of Plaintiff's counsel—the discovery requests themselves are not actually included as exhibits to the declaration. In the future, quotations from readily available documents or evidence should be supported by presenting the document itself.

exactly was said, whether statements were oral and/ [sic] written, if oral, who was present during the exchange, and, if written, describe the document (if produced in the litigation, it is sufficient to identify by bate stamp number.)

Dkt. 24-2 at 4. In response, Plaintiff answered:

> In approximately April 2016, I met with William Binion (PA-C) . . . . During the visit I reported severe stomach pains and feeling distraught due to the hostile environment I was experiencing at work. . . . Mr. Binion explained to me how stress could affect the body, he then commented that I should look for a job elsewhere because my work environment was having an adverse effect on my health, and that for the benefit of my health, I needed to quit since it was apparent that the retaliation and ostracism was not going to stop. Mr. Binion referred me to see the mental health doctor on staff, Dr. Alexander Patterson, whom I visited sometime in May 2016.
> During my visit with Dr. Patterson, I described the harassment and retaliation that I had experienced at work and how I was having issues sleeping and feelings of despair and dread about work. Dr. Patterson told me that no job was worth the physical and mental strain that I was enduring and that I needed to quit. I explained that it was not that easy because I have a family to support; we then discuss [sic] tightening my household budget, before he commented that it was in my best interest to quit. He said that there was nothing more he could do for me and that he would refer me to another provider.
> In June or July 2016, I began visiting Dr. Sharon Young, Ph.D., LMFT . . . for stress-related issues stemming from the hostile work environment I experienced at work.

*Id.* at 4–5. In her production of medical records and responses to interrogatories, Plaintiff stated: "This letter and its attendant production of documents are not intended to waive, and do not include the waiver of, any of Plaintiff's objections, privileges or rights." Dkt. 19-1 at 2.

On April 13, 2018, during the telephone conference between the parties, counsel for Plaintiff offered to enter a stipulation, amend the complaint, or do both in order to

limit the scope of relief sought in the lawsuit and establish that Plaintiff "seeks only garden-variety emotional distress damages." Dkt. 19-4 at 2.

On May 3, 2018, the Army's counsel informed Plaintiff's counsel that the Army would be scheduling depositions for P.A. William Benion, Dr. Alexander Patterson, and Doctor Sharon Young. Dkt. 19-3 at 3. On May 4, 2018, Plaintiff's counsel responded by stating the following:

> As for Ms. Ferrell's treating medical professionals, I do not see the purpose of their depositions given our position, as outlined in my April 10 letter and our phone conference on April 13, that Ms. Ferrell will seek only garden-variety emotional distress damages at trial, and as such, will not allege or offer testimony about a specific psychological or medical condition caused or exacerbated by Defendant's conduct. Under these circumstances, deposing these witnesses is an unnecessary invasion of privacy that is not warranted by any claims or defenses in this case. Please let me know if you intend to move forward with these depositions, so we can gauge whether and when to seek relief from the Court.

*Id.* at 3. Counsel for the Army replied by stating that it would require the deposition of the three medical providers unless "Ms. Ferrell withdraws and agrees to dismiss her constructive discharge claim and confirms in a stipulation that testimony or other evidence relating to the providers will not be offered." *Id.* at 2.

B. **Discovery Propounded by Plaintiff**

On September 12, 2017, Plaintiff served the Army with her first set of interrogatories and requests for production. Dkt. 21 at 1; Dkt. 21-1. Among those discovery requests were the following:

> **INTERROGATORY NO. 3**: Please *describe in detail* all complaints, formal or informal, whether written or verbal, *concerning* sexual harassment or other sexual misconduct made by employees, soldiers,

or officers within the Logistics Readiness Center at JBLM from 2008 to present. *Your* answer should include:
   a. The name, last known address, and phone number of the complainant;
   b. The name, last known address, and phone number of the accused or person subject to the complaint;
   c. The nature of the complaint;
   d. The date of the complaint;
   e. Whether any documents were generated regarding the incident, including, but not limited to letters, emails, memoranda, or reports;
   f. The person(s) who responded to the complaint;
   g. Whether a complaint was filed in court, and if so, the jurisdiction and case number;
   h. The resolution of the complaint, including whether compensation was paid, or disciplinary action taken.
. . .

**REQUEST FOR PRODUCTION K:** Please produce TSgt. Mario Blanks's complete personnel file, however denominated. Your response should include, but not be limited to supervisors' files, any performance reviews, awards, disciplinary notices, warnings, complaints, audits, contracts, and correspondence, however transmitted.
. . .

**INTERROGATORY NO. 9**: Please describe in detail all complaints made by any employee, soldier, or officer concerning TSgt. Mario Blanks regardless of whether any such complaint was formal or informal, or written or verbal. Your answer should include:
   a. The name, last known address, and phone number of the complainant;
   b. The name, last known address, and phone number of the accused or person subject to the complaint;
   c. The nature of the complaint;
   d. The date of the complaint;
   e. Whether any documents were generated regarding the incident, including, but not limited to letters, emails, memoranda, or reports;
   f. The person(s) who responded to the complaint;
   g. Whether a complaint was filed in court, and if so, the jurisdiction and case number;
   h. The resolution of the complaint, including whether compensation was paid, or disciplinary action taken.
. . .

**REQUEST FOR PRODUCTION L:** Please produce all correspondence by *Defendant*, however transmitted, *concerning* the allegations in the *Complaint*. *Your* response should include, at a minimum, all communications between TSgt. Mario Blanks, TSgt. Christopher Leulaui, A1C Sabina O'Rourke-Perry, Chief Master Sgt. Sylvia Morris, Commander Lt. Col. Joseph Muhlberger, 627 LRS Civilian Supervisor Darrell McKinney, SMSgt. Torres (1st Shirt), MSgt. Tiffany McKee, MSgt. Tapscott, Gloria Burt, Pamela Campbell, Sharon Lau, Teri Shaw, Tamara Moland, and David Saffold.

. . .

**REQUEST FOR PRODUCTION N:** Please produce all *documents* sent or received by *you concerning* the claims alleged in the *Complaint*.

Dkt. 21-1. On October 27, 2017, the Army returned its answers. *Id.* Since its initial responses were returned to Plaintiff, the Army has supplemented its answers on seven occasions, the most recent time occurring on April 26, 2018. Dkt. 21-2.

On April 10, 2018, Plaintiff contacted the Army to assert that its responses were deficient in the following ways:

**Interrogatory No. 3** requests information about "all complaints … concerning sexual harassment or other sexual misconduct by employees [and others] within the Logistics Readiness Center at JBLM" since 2008. In its response, Defendant promised to search for any such complaints since 2012, but has yet to produce any information. Please supplement this response immediately. . . .

**Request for Production K** seeks the same information as RFP J, but for Tsgt. Mario Blanks. In response, Defendant promised to produce "[ ]relevant information" from Tsgt. Blanks files, but it is not clear whether Defendant's production is complete. Defendant's response is especially problematic when compared to its response to RFP J, as it stands to reason that if Defendant is unable to retrieve Plaintiff's personnel file, it would have equal trouble retrieving Tsgt. Blanks's file. Please supplement this response, and be sure to include any supervisory notes concerning Defendant's investigation into Tsgt. Blanks's admitted forgery of Plaintiff's signature, as well as his performance evaluations.

**Request for Production L** concerns correspondence between several records custodians about Plaintiff and the allegations made in her judicial complaint. You claimed that this request was unwieldly, so we identified search parameters in my email to you dated January 23, 2018, to

narrow the universe of documents. While Defendant has produced
documents in response to our narrowed request, many of the documents
produced are duplicates and post-date Plaintiff's employment separation.
Moreover, documents from the following custodians are largely absent:
TSgt. Mario Blanks, TSgt. Christopher Leulaui, A1C Sabina O'Rourke-
Perry, Chief Master Sgt. Sylvia Morris, Commander Lt. Col. Joseph
Muhlberger, 627 LRS Civilian Supervisor Darrell McKinney, SMSgt.
Torres (1st Shirt), MSgt. Tiffany McKee, MSgt. Tapscott, and Pamela
Campbell. In addition, Defendant has produce no responsive instant
messages. Finally, many of the emails produced do not adhere to the search
parameters agreed upon by the parties, as Plaintiff and/or her husband,
Drew Ferrell, appear in the "To," From," "Cc," or "Bcc" fields contrary to
the parties' agreement. Please supplement this request immediately.

**Request for Production N.** *See* comments above concerning RFP L.

**Interrogatory No. 9** and **Request for Production W** seek
documents and information about complaints, of any kind, against Tsgt.
Mario Blanks. Defendant unfairly seeks to limit the scope of this request to
complaints about sexual harassment, but Tsgt. Blanks's acknowledged
wrongdoing against Plaintiff extends to crimes of dishonesty, which
broadens the scope of permissible discovery into his other bad acts at work,
and not just sexual harassment. Please supplement Defendant's answer and
response immediately.

**Request for Production Z** seeks information about Plaintiff's
employment benefits, including retirement benefits, group insurance, dental
insurance, life insurance, visual care benefits, and disability insurance. This
information is clearly relevant as it relates to Plaintiff's damages. We do
not believe that documents evidencing these benefits have been produced;
please supplement this response immediately.

Dkt. 21-3 at 3–4.

On April 13, 2018, Plaintiff propounded her second set of interrogatories and

requests for production, which included the following:

**INTERROGATORY NO. 10:** Please describe in detail all
complaints, formal or informal, whether written or verbal, concerning
sexual harassment or other sexual misconduct made by Sabina O'Rourke-
Perry against "SrA O'Niell," as alluded to in USAO_000155. Your answer
should include:
   a. The name, last known address, and phone number of the
complainant;

b. The name, last known address, and phone number of the accused or person subject to the complaint;
　　　　　　c. The nature of the complaint;
　　　　　　d. The date of the complaint;
　　　　　　e. Whether any documents were generated regarding the incident, including, but not limited to letters, emails, memoranda, or reports;
　　　　　　f. The person(s) who responded to the complaint;
　　　　　　g. Whether a complaint was filed in court, and if so, the jurisdiction and case number;
　　　　　　h. The resolution of the complaint, including whether compensation was paid, or disciplinary action taken.
. . .
**REQUEST FOR PRODUCTION: AA [27]:** Please produce all *documents* that relate or refer to your answer to the preceding interrogatory.
. . .
**REQUEST FOR PRODUCTION: AB [27]**: Please produce *your* entire unredacted file from any and all Commander Directed Investigations ("CDI") to investigate Sabina O'Rourke-Perry's complaints against "SrA O'Niell," as alluded to in USAO_000155.
. . .
**REQUEST FOR PRODUCTION: AC [28]:** Please produce a complete, unredacted copy of the Report of Investigation for any and all EEO complaints filed by Sabina O'Rourke-Perry against "SrA O'Niell," as alluded to in USAO OOOl55.
. . .
　　　　**INTERROGATORY NO. 11:** Since June 21, 2016, have you deleted or destroyed any documents, relating to Plaintiff, the allegations in the Complaint or your Answer? If so, please identify each document you have deleted or destroyed, the identity of the person(s) who authorized such deletion or destruction, the date(s) the deletion or destruction occurred, and whether you can access such document through backup media or archive.
. . .
　　　　**REQUEST FOR PRODUCTION NO. AH [33]:** Please produce all emails and instant messages sent, received, or otherwise transmitted by Tsgt. Mario Blanks through your email and/or instant messaging system since 2008, using any of the following terms:
　　a. "Fuck"
　　b. "Fucking"
　　c. "Fucked"
　　d. "Fucker"
　　e. "Motherfucker"
　　f. "UTI"

g. "Urinary tract infection"
                h. "Urinary track infection"
                i. "Ass"
                j. "Sex"
                k. "sexual"
                l. "Sexy"
                m. "Swap"
                n. "Swapping"
                o. "Tag team"
                p. "Tag teaming"
                q. "Fine:
                r. "bitch"
                s. "cunt"

Dkt. 21-7. On May 18, 2018, the Army returned its responses. *Id.*

**C.      Pending Motions**

On May 25, 2018, Plaintiff filed her motion for a protective order. Dkt. 18. On May 29, 2018, Plaintiff moved to compel the production. Dkt. 20. On June 11, 2018, the Army filed responses to Plaintiff's motions. Dkts. 23, 25. On June 15, 2018, Plaintiff filed replies on both motions. Dkts. 29, 30.

## II.    DISCUSSION

**A.      Motion for Protective Order**

Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders in civil matters. Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th. Cir. 2005); Fed. R. Civ. P. 26(b)(1). Courts are required to modify or quash subpoenas that require the disclosure of a privileged matter or subject a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A). Also, courts may enter a protective order "to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The moving party bears the burden of showing that "specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The Court may limit discovery or enter a protective order where the moving party shows that the interests in limiting discovery "outweigh [the discovery's] likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2) (C)(iii). *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469–70 (9th Cir. 1992).

Plaintiff seeks to prevent the deposition of healthcare providers that allegedly advised her to leave her position at JBLM due to negative impacts on her mental health. Dkt. 18. Psychotherapist-patient privilege generally protects confidential communications between a licensed psychotherapist and a patient in the course of diagnosis or treatment. *See Jaffee v. Redmond*, 518 U.S. 1, 15, 10–18 (1996). Records of these types are protected from disclosure under Federal Rules of Evidence 501. *Id*. However, parties are prohibited from using this privilege as "both a sword and shield." *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229–30 (D. Mass. 1997). Instead, the psychotherapist-patient privilege is waived "if communication between the two is put at issue by the patient, for

example, where the cause of action relies on advice or findings of the psychotherapist."
*Id.*

Plaintiff has unambiguously placed the communications between her and the subject health care providers at issue in this case. Plaintiff's complaint states that she "sought medical treatment . . . due to the stress and anxiety of the retaliation and ostracism . . . [and] care providers highly recommended plaintiff resign due to the hostile conditions of her current job . . . ." Dkt. 1 at 4. Furthermore, Plaintiff wrote in her letter of resignation that she needed to resign because "[u]nder the advice of . . . medical professionals it is in my best interest to leave from my job . . . ." Dkt. 24-1 at 2. Plaintiff's mental health treatment around the time of her resignation is inextricably intertwined with her claim of constructive discharge. Even if Plaintiff omits any reference to mental health treatment in her claim of constructive discharge or limits her claim for non-economic damages to "garden-variety" emotional damages, advice from the subject health providers was still her proffered reason for resignation and the Army is entitled to present the jury with Plaintiff's proffered reason for resignation and then rebut her claims.

If Plaintiff seeks to narrow the scope of the depositions, it may be appropriate for the Court to enter a protective order limiting the scope of inquiry. As explained above, the Court has broad discretion in determining what degree of protection may be warranted when discovery implicates such confidential subject matters. However, Plaintiff has not requested any particular relief short of a complete bar on the depositions of the mental healthcare providers referenced in her complaint. The Court will not

fashion partial relief without a request or input from the parties. Furthermore, if a narrower scope of relief was requested, the Court would be reluctant to grant such relief—even in the context of "garden-variety" emotional distress damages, the deposition of Plaintiff's healthcare providers appears necessary when she alleges generally that she sought treatment for her emotional distress and the advice Plaintiff received in treatment was cited at the time of her resignation as a significant factor in her decision to leave. Accordingly, Plaintiff's motion for a protective order is denied.

**B.     Motion to Compel**

Plaintiff moves to compel responses to numerous interrogatories and requests for production. As stated above, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). A party seeking discovery may move for an order compelling production if a party fails to produce documents or answer discovery as requested. Fed. R. Civ. P. 37(a)(3)(B). Any motion for an order compelling disclosure or discovery must include a certification, in the motion or in a declaration or affidavit, that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to resolve the dispute without court action. W.D. Wash. Local Rules LCR 37(a)(1). If a party fails to meet and confer on the issues raised in the motion, the Court may deny the motion without considering its merits. *Id.*

### 1. Interrogatory No. 3 and Request for Production C

Plaintiff argues that Defendant insufficiently responded to Interrogatory No. 3 and its related Request for Production C that she propounded on September 12, 2017, by failing to produce documents relating to the "Command Directed Investigation" into coworker Sabina O'Rourke-Perry's earlier sexual harassment complaint. Specifically, Plaintiff complains that Defendant has failed to produce a witness statement by Plaintiff's alleged harasser that is referenced in the CDI's summary report.

Documentation of sexual harassment claims in which Plaintiff's alleged harasser was an involved party or witness is certainly relevant to Plaintiff's claims of a hostile work environment. The Army notes that it has no objection to disclosing the referenced statement, but rather, argues that it did not know the disclosure was incomplete and that Plaintiff did not "meet and confer" on the issue. Plaintiff argues that the issue was raised in counsel's April 10, 2018 letter requesting a discovery conference. *See* Dkt. 19-2 at 3. However, the Court notes that the April 10, 2018 letter referred only generally to Interrogatory 3 and Request for Production C—it did not refer to any specific shortcomings, such as the claimed failure to include CDI witness statements. Moreover, it appears no documents had been produced at the time of the letter, indicating that the Army has since tried to comply with the request, but may have overlooked certain responsive documents in its search. There is nothing on the record to suggest that a dispute over missing CDI witness statements has since been raised in a discovery conference. A "meet and confer" is pointless if it does not afford the responding party

sufficient specificity regarding its response's deficiencies in order to cure them. Accordingly, Plaintiff's motion to compel is denied on this issue.

Regardless of whether this issue was adequately raised in a discovery conference, it has been raised clearly in this motion. The Army has stated that it will again search for responsive documents—CDI witness statements in particular—and the Court will expect the Army to follow through on its commitment.

### 2. Interrogatory 9 and Requests for Production K and W

Plaintiff argues that the Army has failed to adequately respond to Interrogatory No. 9 and Requests for Production K and W, regarding Tsgt. Mario Blanks's employment history and any complaints made against him. The Army acknowledges that "through oversight or a misunderstanding" additional supplemental records were not produced until receipt of Plaintiff's motion. Dkt. 25 at 4. This issue was raised with specificity in the Plaintiff's April 10, 2018 letter, and was therefore likely discussed in the parties' subsequent discovery conference, as averred by Plaintiff's counsel. While the Army has since supplemented their disclosure, it is still "confirming whether more records exist." Dkt. 25 at 4. These discovery requests were clear on their face and should have been responded to without any further follow-up from Plaintiff. Moreover, despite Plaintiff's clear and specific follow-up letter and subsequent conference, materials were still overlooked. Plaintiff's motion to compel is granted on the issue of Tsgt. Blank's performance reviews. While it is not clear whether there remain additional materials that need to be disclosed after the Army's most recent supplemental response, to the extent

the Army needs to "confirm" whether more responsive records still exist, those efforts should be completed no later than July 13, 2018.

To the extent Plaintiff complains that the Army has not included records of "Article 15" discipline for an unspecified incident of "dereliction of duty" while Tsgt. Blanks was stationed in North Carolina, the motion is denied. Plaintiff has not submitted any corroborating information that any such discipline ever occurred beyond her counsel's vague statement that it did based "on information and belief." Dkt. 21 at 2. The Army has stated that after investigation, this claim is unsupported and no such discipline occurred. Dkt. 25 at 5. Furthermore, this specific issue was not raised in a discovery conference, and if Plaintiff's counsel has information regarding any such an incident in North Carolina, such information should have been disclosed in Plaintiff's motion to compel.

**3.     Requests for Production L and N**

Plaintiff complains that the Army failed to produce emails from Lt. Col. Muhlberger and Sabina O'Rourke-Perry concerning to the allegations in the complaint. Defendant has responded that there were no responsive emails from O'Rourke-Perry because she was terminated in January 2016 and her user profile was deleted thirty days later. Dkt. 25 at 7. Plaintiff nonetheless asks to the Court to compel the Army to produce emails that do not seem to exist. Plaintiff also argues that the Army's deletion of these emails constitutes spoliation in light of this litigation's reasonable foreseeability. This may be the case, but the issue of spoliation was not fully briefed in Plaintiff's motion nor adequately supported by Plaintiff's supporting declarations. Moreover, even if Plaintiff

can show spoliation, Plaintiff has not requested any limiting instruction or other form of relief appropriate for situations of spoliation.

Plaintiff also complains that the Army does not offer any response to her concerns regarding the absence of responsive emails of Lt. Co. Muhlberger. However, the Army has indicated that none exist. Dkt. 25 at 7 ("Plaintiff correctly notes that no emails were produced for custodians Tapscott and Torres, and very few for certain other custodians."). Also, in the initial motion, Plaintiff complained that no emails to or from Chief Master Sgt. Sylvia Morris, SMSgt. Torres, or MSgt. Tapscott were produced. The Army addressed these emails in its response and stated that no more responsive emails existed, but that it is willing to "try a different means" to double-check its work. Plaintiff does not address these emails in its reply. The Army should promptly double-check its work and any additional responsive emails not already disclosed should be provided to Plaintiff no later than July 13, 2018.

### 4. Plaintiff's Second Set of Propounded Discovery

Plaintiff failed to meet and confer with the Army regarding its purportedly deficient response to Plaintiff's second set of discovery requests prior to bringing this motion. The motion is denied. W.D. Wash. Local Rules LCR 37(a)(1). Plaintiff's request to renote the motion is also denied with the expectation that the Army will promptly cure any deficiency that is raised in a discovery conference as promised in its response brief.

## C. Costs and Fees

While Plaintiff's motion to compel was warranted in some regards, in others it was not. Notably, some of the issue raised in the motion do not appear to have been raised in a

discovery conference before being presented in the present motion. Furthermore, Plaintiff's motion for a protective order is being denied. Accordingly, an award of costs and attorney fees associated with the preparation and filing of the present motions is inappropriate pursuant to Rule 37. *See* Fed. R. Civ. P. 37(a)(5)(A)(i), (ii).

### III. ORDER

Therefore, it is hereby **ORDERED** as follows:

1. Plaintiff's motion for a protective order (Dkt. 18) is **DENIED**; and

2. Plaintiff's motion to compel (Dkt. 20) is **GRANTED in part** and **DENIED in part** as described above.

Dated this 5th day of July, 2018.

BENJAMIN H. SETTLE
United States District Judge